EDWARD GROSVENOR AND JOHN F. GROSVENOR v. J. WARREN ELLIS AND GEORGE A. FIELD.

*Measurement of lumber—Hearsay—Interest as damages—Referee's report.*

A contract for sawing lumber provided for its measurement as the work advanced. In an action on the contract, proof was offered of a measurement made more than a year afterwards. *Held* admissible, in the absence of any explanation in the record, as strict compliance with the terms of the contract might have been impossible or been waived. Measurement by either party or by both would have been admissible and proper to guard against mistakes or fraud, and if measurement was not made on delivery it might be made afterwards.

In an action on a contract for sawing logs testimony that a witness had heard something going to affect the correctness of plaintiffs' scale from certain specified persons, is not hearsay.

Evidence that might have been proper must be presumed so, where the record shows nothing to the contrary.

In an action to recover charges for sawing logs defendant claimed an offset of the damages resulting to him from delay in doing the work, and was allowed the interest on the value of the logs for the period of delay. *Held,* that although he was not entitled to interest, the damages might very justly be measured by the rate of interest if the market value of the logs had not changed, and the award was sustained.

A referee's conclusions are presumed to have been warranted by the proofs if the bill of exceptions does not contain all the evidence.

An article that has a market value is presumably salable.

Error to Kent.    Submitted Oct. 14.    Decided Oct. 27.

ASSUMPSIT.    Plaintiffs bring error.    Affirmed.

*E. S. Eggleston* for plaintiff in error.

*Taggart & Wolcott* for defendant in error.

COOLEY, J.   The plaintiffs sued to recover their charges for sawing for defendants a large quantity of lumber under a contract, a copy of which appears in the margin.*

---

*Article of agreement made this seventh day of April, A. D. 1876, by and between E. & J. F. Grosvenor of Nelson, Kent county, Michigan, of the first part, and Ellis & Field of the city of Grand Rapids, county and state aforesaid, parties of the second part, witnesseth: that the said parties of the first part agree to move their steam saw-mill at their own expense on to a spot cleared for the purpose by the second parties, and to manufacture the lumber on lot four (4) and the n. e. ¼ of the s. e. ¼ of section two, town ten north of range eleven west, also the timber cut from O. Smith's land and put into the lake described below, into lumber of such kinds and dimensions as the parties of the second part may direct and in a workmanlike manner, to the entire satisfaction of the parties of the second part (who, if at any time should not be satisfied, shall make it manifest by notifying the parties of the first part), sort the same as it comes from the saw into such lengths, kinds and qualities as the second party may direct, and place it on a car (for that purpose) for $2.50 per thousand feet.

The parties of the first part agree to take all the lumber which may be injured by being badly sawed or handled and pay for it what it would have been worth had it not been damaged.

The parties of the second part agree to pay the parties of the first part

The larger portion of their bill had been paid, and the defense to the remainder was that the lumber was damaged by bad sawing, and also that great delay occurred in doing the work, from which the defendants suffered damages to a considerable amount.

The case was sent by the circuit court to a referee, and comes before us on his findings and on a bill of exceptions. The bill of exceptions is peculiar in that it is silent respecting the proof of the plaintiffs' case. It is of course to be assumed that the plaintiffs made a *prima facie* case, but in the absence of any statement how this was done and on proof of what facts, we are somewhat embarrassed in considering

---

$2.50 per thousand feet for sawing, assorting and piling upon car the above-described timber, payable as follows, viz.:

On the first of each and every week, one dollar and fifty cents ($1.50) per thousand feet on all which was sawed the week previous, shall become due and payable; the balance, one dollar ($1) per M. shall become due and payable on the first day of July, A. D. 1877, without interest.

The measurement to be made at expense of said party of first part, by Myron Buck, so long as said measurement shall be satisfactory to both first and second parties, but when not satisfactory to either parties, then all full piles which were sawed the week previous shall be measured by first and second parties (or some one or two appointed by and paid for by each party, paying one-half), and on said amount sawed the week previous (the measurement to be made the first of each week), one dollar and fifty cents ($1.50) per thousand feet shall become due and payable at time of making such measurement; the balance (one dollar per thousand feet) shall become due and payable the first day of July, A. D. 1877, without interest.

. The parties of the first part agree to move and furnish the second parties, without charge, the use of their railroad track, switches and trucks, for the purpose of handling lumber and to take the logs from the lake on the south-west corner of lot four, as described above. The parties of the first part, agree to commence sawing on the contract as soon as practicable, and to be in full running order by the first day of June next, and to average sawing not less than twenty thousand feet per day, from said first day of June, A. D. 1876.

Said first parties agree to furnish said second parties, without charge, the use of land and said track at Lockwood station for piling and shipping their lumber, whenever they may desire to do so.

The parties of the first part agree to pay the parties of the second part three dollars and fifty cents ($3.50) per week for board of each man employed on the job, provided the board shall be satisfactory, the board bill payable weekly.

The parties of the first part agree to furnish the parties of the second part, power (without charging) sufficient to work up the slabs coming from said logs, or as many of them as they may wish to cut.

[Signed]                                   ELLIS & FIELD.

                                          E. & J. F. GROSVENOR.

the exceptions of the plaintiffs, who are the party now complaining.

The first exception is to the admission of evidence on the part of defendants that they had made a measurement of the lumber sawed under the contract, which they completed on the Monday preceding the trial; which was on the tenth day of April, 1878, and more than a year after the sawing was completed. A reference to the contract will show that this was not such a measurement as was contemplated by its terms. But in the absence of any explanation we cannot say that this was inadmissible. A strict compliance with the terms of the contract in respect to measurement may have become impossible, or may have been waived; and under such circumstances the parties must arrive at the quantity as best they might. Measurement by either or both as delivery was made would have been admissible, and under any circumstances would have been proper, to guard against frauds or mistakes on the part of the scales agreed upon. And if measurement was not made at delivery, it might be made afterwards.

The second exception relates to the following question put to the defendant Field when on the stand as a witness, and the answer thereto: Question. "Have you heard anything which goes to affect the correctness of the scale made by the plaintiffs? when, and from whom?" Answer. "From Frank Whittaker and John Newton, within the last three weeks; one within the last ten days." This is said to be hearsay. Had the witness stated what he had heard, it would have been improper, but it might be entirely competent for him to state that he had but recently had occasion to doubt the correctness of the plaintiff's scale. We are without explanation here as we are in respect to the preceding exception; but it is possible for this evidence to have been proper, and we must presume it was.

A third exception, resting on the same ground as the first, requires no further notice.

The referee found that the plaintiffs began the sawing July 6, 1876, and continued it to December 1, 1876, having then

sawed 2,323,356 feet; that they resumed sawing April 14, 1877, and completed the job June 9, 1877.

That defendants found fault with the sawing as it progressed, and that 300,000 feet of this lumber was injured by bad sawing to the amount of $300.

That the defendants suffered damages by reason of the sawing not having been completed as agreed, to the amount of $414.79.

That after deducting from the plaintiff's bill the payments made and the damages suffered as above, there remained due to the plaintiffs $1011.91.

The damages suffered by the defendants from the delay were computed by the referee as follows: Value of time spent in caring for the lumber the second year that should have been sawed the first, $150; additional expenses in moving the lumber to Lockwood, $175; interest on value of logs which by reason of the delay defendants could not have the benefit of the first year, $89.79. All these items are objected to, as is also the evidence upon which the referee computed them. But we do not find in the record any valid objection, either to the evidence or to the conclusions. It is true that, as to this last item, the defendants were not entitled to interest as such, but the circumstances may have been such that the rate of interest constituted a very fair measure of the damages actually suffered. Suppose, for example, the defendants by the delay were deprived for a year of the opportunity of putting their lumber upon the market as they intended and desired, and in the meantime the market price remained stationary, nothing could be nearer exact justice than to award damages equivalent to the lawful interest. The damages will not be interest, but the rate of interest will very justly measure them.

It is urged on behalf of the plaintiffs that it was not made to appear before the referee that defendants could have sold their lumber the first year if they had had it. As to this we do not know how the fact was. The bill of exceptions does not contain all the evidence, and the presumption is that all the referee's conclusions were supported by proofs. More-

over if an article has a market value, it is presumptively salable. Some other objections to the recovery are based upon the supposed absence of sufficient showing, and are equally untenable.

We discover no error in the action of the circuit court confirming the report of the referee, and it must be affirmed with costs.

The other Justices concurred.

